# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

MITCHELL ALICEA,                              )
                                              )
     Plaintiff,                             )
                                              )
     v.                                     )     CAUSE NO.: 2:11-CV-445-TLS
                                              )
P.O. AUBREY THOMAS,                           )
P.O. ALEJANDRO ALVAREZ,                       )
individually and the CITY OF                  )
HAMMOND, a municipal corporation,             )
                                              )
     Defendants.                            )

## OPINION AND ORDER

The case before the Court is a 42 U.S.C. § 1983 action brought by the Plaintiff, Mitchell

Alicea, against the Defendants, P.O. Aubrey Thomas, P.O. Alejandro Alvarez, and the City of

Hammond, alleging that the Defendants used excessive and unreasonable force during the

Plaintiff's arrest. Presently before the Court is the Defendants' Motion for Summary Judgment

[ECF No. 91]. The Defendants seek summary judgment on all counts. The Defendants filed a

Memorandum in Support [ECF No. 92] on October 21, 2013. The Plaintiff filed a Response

[ECF No. 94] on November 15, 2013. The Defendants filed a Reply on November 27, 2013. The

Defendants' Motion for Summary Judgment is ripe for ruling.

## SUMMARY JUDGMENT STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). To survive summary judgment, a nonmovant must be able to show that a

reasonable jury could return a verdict in her favor; if she is unable to "establish the existence of

an element essential to [her] case, and on which [she] will bear the burden of proof at trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), summary judgment must be granted. A bare contention that an issue of fact exists is insufficient to create a factual dispute, but the court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *see Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (noting the often stated proposition that "summary judgment cannot be used to resolve swearing contests between litigants"). A material fact must be outcome determinative under the governing law. *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598–99 (7th Cir. 2000). "Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008).

## STATEMENT OF FACTS

The following facts are not in dispute, unless otherwise noted. On the morning of March 29, 2011, the Plaintiff was walking through the neighborhood of the 4200 block of Towle Avenue in Hammond, Indiana. A neighbor observed the Plaintiff knock on the door, look into the windows, and then walk to the back door of the home of Jerard Descamp. The neighbor called the police who then responded to the home. The Plaintiff broke into the back door and was in the process of burglarizing the home when he saw a police car pull up. He quickly placed some jewelry he had stolen into his pockets and ran out the front door. The Plaintiff ran north on Towle Avenue, turned east and cut through a yard, crossed Cameron Avenue and then encountered another officer by the alley near the corner of Johnson and 141st Street. Upon seeing the officer, the Plaintiff turned back and continued running until he ran into the backyard of 4125

Cameron Avenue and jumped into an above-ground swimming pool. The pool had aluminum walls approximately five feet high and was empty except for a few loose leaves and sticks in the bottom of the pool. The Plaintiff sat down in a corner of the pool and attempted to hide from the police, whom he believed were chasing him.

Meanwhile, the police had established a perimeter to search for the Plaintiff. Defendant Sergeant Aubrey Thomas arrived on the scene and ordered his police dog, Leo, to begin tracking the Plaintiff. According to the Defendants, Thomas yelled out "Hammond Police Canine! Announce or sound off or I'm going to send the dog!" but heard no response. Leo began searching and alerted as he approached the pool, standing with his front two paws on the wall of the pool. Thomas looked inside and saw the Plaintiff, who in turn saw the officer.

In the Defendants' version of the subsequent events, Thomas pulled his service weapon, pointed it at the Plaintiff, and ordered him to "stand up and show me your hands." The Plaintiff was wearing heavy clothing and Thomas was concerned that he might have a concealed weapon. He also was aware that the Plaintiff had fled from the police and was concerned he might flee again. According to the Defendants, Thomas could not enter the pool without the use of both of his hands and he was concerned about taking his weapon off of the Plaintiff, so he ordered Leo to jump into the pool, using one arm to assist the dog while keeping his gun trained on the Plaintiff.  Leo apprehended the Plaintiff by biting and holding his right arm. At that point Thomas, believing it safe to lower his weapon and climb over the wall, did so, retrained his weapon on the Plaintiff, and ordered Leo to release. After Leo released, other officers arrived on the scene.

In the Plaintiff's version of events, when Thomas ordered the Plaintiff to stand up and show his hands, he did so, putting his hands all the way up with palms out and open. The

Plaintiff alleges Thomas then said "You like to rob houses, you fucking punk?" and then used both hands to boost the dog into the pool, giving Leo the command to attack. The Plaintiff claims that within a split second two to three other officers arrived while the dog attacked the Plaintiff's right forearm for minutes, and that Thomas had difficulty calling the dog off the attack. According to the Plaintiff, once the dog was off and while the Plaintiff was still standing, Officer Alejandro Alvarez grabbed the Plaintiff, threw him on the ground, dropped a knee, and began punching him in the ribs and back and kicking him in the head. The Plaintiff claims Alvarez's actions caused pain and left lumps and bruises.

According to the Defendants, the Plaintiff told officers at the scene that he was high on cocaine. Alvarez asked the Plaintiff to place his hands on the pool wall and spread his legs so that he could be checked for any weapons, but the Plaintiff refused. Alvarez then pushed the Plaintiff to his knees and then further down into the prone position when he remained uncooperative. Another officer held the Plaintiff down while Alvarez completed the pat down. Alvarez found money, a ring, and a necklace in the Plaintiff's pocket. The Plaintiff denies that he was uncooperative, and states that he was compliant with the officers' instructions.

The Plaintiff was transported by ambulance to St. Margaret Mercy Hospital to have his injuries treated. The Plaintiff argues that he stated he was high on cocaine for the first time while at the hospital, not beside the pool as the Defendant's argue, in order to secure a room on the cardiac floor of the hospital where he expected better treatment.

**DISCUSSION**

Section 1983 is not a source of substantive rights but instead provides "a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *City of Monterrey v. Del Monte Dunes at Monterrey, Ltd.*, 526 U.S. 687, 749 n.9 (1999). To prevail on a claim under § 1983, a plaintiff must show that "(1) the defendant deprived the plaintiff of a right secured by the Constitution and laws of the United States, and (2) the defendant acted under color of state law." *J.H. Exrel Higgin v. Johnson*, 346 F.3d 788, 791 (7th Cir. 2003) (citing *Reed v. City of Chi.*, 77 F.3d 1049, 1051 (7th Cir. 1996)). The Plaintiff alleges that while the Defendant officers were acting under color of law, they violated his constitutional rights under the Fourth Amendment. The parties do not dispute that the Defendant officers were acting under color of state law. The Court will discuss whether genuine issues of material fact exist as to whether the Defendant officers violated the Plaintiff's constitutional rights during the course of arresting him.

**A.      Indemnification**

The Defendants argue in their Memorandum of Support [ECF No. 92] that Defendant City of Hammond is entitled to summary judgment because respondeat superior liability is not available as a theory of recovery under Section 1983 and that the Plaintiff has failed to allege a pattern, practice, or policy that resulted in a constitutional violation. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). In his Response, the Plaintiff asserts that the Defendants have mischaracterized his claim against the city. The Plaintiff argues he is asserting neither a respondeat superior nor a *Monell* claim, but that, rather, he is asserting an indemnification claim

against the city pursuant to Indiana state law. (Resp. at 4, ECF No. 94.) The Plaintiff argues that

the City is liable to pay any judgment based upon the actions of its police officers acting within

the scope of their employment. Indiana Code § 34–13–4–1[1] provides:

> If a present or former public employee . . . of a governmental entity, is or could be
> subject to personal civil liability for a loss occurring because of a noncriminal act
> or omission within the scope of the public employee's employment which violates
> the civil rights law of the United States, the governmental entity . . . shall . . . pay
> any judgment . . . of the claim or suit.

In their Reply, the Defendants argue that any indemnification claim is premature and must

therefore be dismissed.

Count 2 of the Complaint alleges that, should Defendants Thomas and Alvarez be found

liable for excessive use of force, the Defendant City of Hammond is liable to indemnify the co-

defendants and pay any judgment in this case. It is well-settled, however, that a duty-to-

indemnify claim is not ripe until liability has been established. *Med. Assurance Co. v. Hellman*,

610 F.3d 371, 375 (7th Cir. 2010). Thus, "decisions about indemnity should be postponed until

the underlying liability has been established." *Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353

F.3d 580, 583 (7th Cir. 2003); *see also Nationwide Ins. Co. v. Zavalis,* 52 F.3d 689, 693 (7th Cir.

1995) ("[T]he duty to indemnify is not ripe for adjudication until the insured is in fact held liable

in the underlying suit."); *Grinnell Mutual Reinsurance Co. v. Reinke,* 43 F.3d 1152, 1154 (7th

Cir. 1995) ("[T]he duty to indemnify is unripe until the insured has been held liable."); *Travelers

Ins. Cos. v. Penda Corp.,* 974 F.2d 823, 833 (7th Cir. 1992) ("[T]he determination of whether

[defendant] has a duty to indemnify is not ripe until the underlying litigation is terminated.").

When an indemnification claim is not ripe for adjudication, the Court should dismiss the claim.

---

[1]Although the Plaintiff cited I.C. § 34–4–16.7–1, which was repealed in 1998, the Court assumes
the Plaintiff intended to cite the current and recodified version of the statute.

*Med. Assurance*, 610 F.3d at 375 ("The district court was aware that the duty-to-indemnify claim

was not ripe, but rather than dismiss that aspect of the case, it included it in the stay that was

issued. The proper disposition, however, would have been to dismiss."); *Zavalis*, 52 F.3d at 693

(finding the district court correctly dismissed without prejudice the declaratory judgment action

for duty to indemnify when the Defendant's liability had not yet been established).

For the foregoing reasons, Count 2 of the Plaintiff's Complaint (the indemnification

claim) is dismissed without prejudice. Because the Complaint only alleges a duty to indemnify

with respect to Defendant City of Hammond and no other violation by the City of any

constitutional right, the Defendant City of Hammond is dismissed without prejudice from this

case.[2]


**B.      Fourth Amendment—Excessive Force**

"[T]he Fourth Amendment prohibits the use of excessive force during the execution of a

seizure." *Jacobs v. City of Chi.*, 215 F.3d 758, 773 (7th Cir. 2000). When officers' actions are

"'objectively reasonable' in light of the facts and circumstances confronting them," from the

perspective of a reasonable officer, the officers' actions do not constitute excessive force.

*Graham v. Connor*, 490 U.S. 386, 397 (1989). "The 'reasonableness' of a particular use of force

must be judged from the perspective of a reasonable officer on the scene, rather than with the

20/20 vision of hindsight." *Id.* The "calculus of reasonableness must embody allowance for the

fact that police officers are often forced to make split-second judgments—in circumstances that

---

[2]In further support of their argument that the indemnification claim against the City should be
dismissed, the Defendants argue that I.C. § 34–13–4–1 does not create a private right of action for the
Plaintiff against the City. The Court declines to address this argument, however, since the Defendants
prevail on the point that indemnification is not yet ripe.

are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97. "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). A court must consider all the circumstances and look to the following factors when determining whether the amount of force used is reasonable: "'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Johnson v. Scott*, 576 F.3d 658, 660 (7th Cir. 2009) (quoting *Graham*, 490 U.S. at 396).

**1.      Officer Thomas**

The Defendants argue that Officer Thomas' decision to employ the police dog to apprehend the Plaintiff was objectively reasonable. They argue that the Plaintiff was a felony burglary suspect who was actively evading arrest and whom Thomas was concerned posed an immediate threat to his safety. The Defendants contend Thomas could not take the Plaintiff into custody without lowering his weapon and climbing over the pool wall, which would have given the Plaintiff the opportunity to inflict lethal bodily harm or continue to flee from police. Thus, the Defendants argue it is immaterial that the Plaintiff claims he raised his hands, which the Defendants dispute, because, assuming that the Plaintiff had raised his hands, he could have changed his mind and reached for a weapon or continued to flee while the officer was climbing over the pool wall. In particular, the Defendants argue this case is indistinguishable from the facts of *Johnson v. Scott*, 576 F.3d 658 (7th Cir. 2009), where the Court found the officer's

decision to employ a police dog objectively reasonable.

In *Johnson*, an officer responded to a dispatch concerning a suspected shooting at a nightclub and report that a white Chevrolet Caprice was seen leaving the parking lot. *Id.* at 659. The officer spotted the car and activated his emergency lights, but the car fled, ignoring a stop sign and speeding on ice covered roads. When the suspect encountered a police roadblock, he abandoned the car and fled on foot. *Id.* The officer jumped out of his squad car to pursue the suspect and released his police dog to do the same. *Id.* The suspect ran through a residential yard, and jumped a chain-link fence, but quickly turned, put his hands in the air, and said "I give up" when he was blocked by a five-foot-tall wooden fence. At the time of his surrender, the officer and police dog were only six to eight feet behind. The dog grabbed the suspect's arm while the officer knocked him to the ground. The suspect struggled to get away from the dog's biting, which the officer interpreted as resistance, and so the officer struck the suspect several times to subdue him. Within five to ten seconds of successfully handcuffing the suspect, the officer ordered the dog off and the dog complied.

The suspect brought an excessive force claim against the officer, but the Seventh Circuit found the officer's actions were objectively reasonable and affirmed the district court's decision to grant summary judgment. The court noted that two serious crimes at issue, a shooting and reckless flight from the police in a vehicle, the first of which allowed the officer to reasonably believe the suspect might be armed, as well as the suspect's attempts to evade arrest. Although the suspect insisted that the use of force was unreasonable because he had surrendered, the court held that the officer was not required to take the suspect's apparent surrender—made a split second before he was apprehended—at face value and was entitled to err on the side of caution when faced with an uncertain or threatening situation, that the surrender did not establish that the

suspect was unarmed, and that a reasonable officer could think use of the dog was necessary because the suspect might have had the time needed to retrieve and use a weapon.

The Plaintiff argues that *Johnson* is clearly distinguishable from the present case because two serious crimes were at issue in *Johnson*; a shooting, making it reasonable to believe that Johnson was armed, and reckless flight from the police in a vehicle, making it reasonable to believe that Johnson posed a threat to the safety of others. To the Plaintiff, the case law upholding the use of police dogs to apprehend suspects virtually all involve crimes that are more violent than burglary and involve at least some evidence of danger to police officers and others, which the Plaintiff contends are absent here. Unlike *Johnson*, where the suspect was actively fleeing on foot until surrendering at the last second, the Plaintiff argues that he was no longer fleeing or evading police while sitting in the pool in an attempt to hide, and that his method of flight did not endanger anyone. To the Plaintiff, it is a question of fact for the jury to determine whether Officer Thomas's decision to employ the police dog was reasonable.

In addition to his arguments to distinguish *Johnson*, the Plaintiff has presented argument regarding the *Graham* reasonableness factors. As to the first *Graham* factor, the Plaintiff acknowledges that burglary is a serious crime but argues that it is not inherently violent per se and that the officers had no reason to believe the Plaintiff was armed or had the intent to do anything more than steal. As to the second factor, the Plaintiff argues that he did not pose a threat of safety to officers or others because he was seated in an empty pool and fully complied with Officer Tomas's instructions by raising his hands above his head with his hands open and empty. As to the third factor, the Plaintiff argues that while he had ran from officers in an attempt to evade capture prior to his interaction with Officer Thomas, he was not actively fleeing at the time Officer Thomas discovered him. The Plaintiff contends that he was no longer actively

resisting arrest or attempting to evade arrest by flight because he was found sitting in the pool and complied when ordered to raise his hands.

Taking all facts in the light favorable to the Plaintiff, the Court finds that Officer Thomas's decision to use the police dog to apprehend the Plaintiff was objectively reasonable. First, burglary is a serious crime, which the Plaintiff acknowledges. Here, the Plaintiff was observed by a neighbor who contacted authorities and, upon their arrival on scene, the Plaintiff immediately fled in an attempt to evade arrest. Although the Plaintiff tries to distinguish robbery as a more violent and thus more severe crime, burglary in this context is no less severe. A burglar who began his crime alone but has been confronted, by authorities or civilians, has as much incentive as a robber to prevent his capture and avoid the consequences of his illegal action. While he may not have had the initial intent to use force or violence against another, the surprise of being discovered and quick decision to flee presents a severe and dangerous situation, for just as quickly as the burglar decides to flee, he may decide that it is beneficial to use a weapon to prevent his capture. The Plaintiff argues that there was no indication that he was armed when the police were responding to the call about a burglary in progress, but there also was no indication that the Plaintiff was not armed. A responding police officer is "entitled to err on the side of caution when faced with an uncertain or threatening situation," and under the Plaintiff's version of the facts, the police officers had limited information about the nature of the Plaintiff and crime when responding to the scene and were entitled to err on the side of caution that the Plaintiff might be armed and dangerous.

Second, the Court finds the Plaintiff's arguments that he did not pose an immediate threat to the safety of the officers or others unpersuasive. The Plaintiff contends that he was no longer fleeing or evading arrest when discovered by Officer Thomas and that he did not pose a threat

11

when he raised his hands. However, he could have quickly changed his mind and the officer was not required to take his apparent surrender at face value. *See Johnson*, 576 F.3d at 660. The Plaintiff's surrender did not establish that he was unarmed, and he could easily have decided to take off again by jumping the pool wall, as he had already done, or reach for a weapon. It is immaterial whether the officer used one or two hands when boosting the police dog into the pool to help apprehend the Plaintiff. Not all surrenders are genuine, and it was not unreasonable for Officer Thomas to send the dog into the pool to hold the Plaintiff.

Finally, the Plaintiff's attempt to convince the Court that he was no longer actively resisting arrest or attempted to evade arrest by flight is unpersuasive. The Plaintiff acknowledges that he was hiding when he was discovered in the pool, which could serve no other purpose than an attempt to evade arrest, even if he was no longer actively running. The facts, construed in the light most favorable to the Plaintiff, bear out that he fled on foot when the police arrived, changed direction when he saw the police at the end of an alley, and chose to hide in an empty pool when the option presented itself. The Court finds that the Plaintiff was actively attempting to evade arrest by flight, including when he was hiding in the pool, when Officer Thomas discovered him.

The Plaintiff also argues that there is no evidence that the police gave any sort of warning before releasing the dog to attack. Instead, the Plaintiff claims he complied with Officer Thomas's order to show his hands and then Thomas said "You like to rob houses, you fucking punk?" just before throwing the dog into the pool. The Defendants respond that Officer Thomas testified under oath that he did give a warning, shouting "Hammond Police Canine! Announce or sound off or I'm going to send the dog!" before starting his search for the Plaintiff and that the Plaintiff acknowledged in his deposition that he heard police conversation but could not make

out the words. Thus, the Defendants argue that, if the Plaintiff did not hear the warning, it was a consequence of the Plaintiff's decision to flee from the police. Considering the facts in the light most favorable to the Plaintiff, the Court finds that there may be a potential factual dispute as to whether the Plaintiff heard the warning, if made, but that any such dispute is immaterial. At the time of the dog's release in this case, the whereabouts of the Plaintiff were unknown and it is reasonable for the police to use a trained dog to search for and hold fleeing suspects. *See Johnson*, 576 F. 3d at 661 (finding that although there was no verbal warning, the plaintiff failed to show how such a warning would make a difference and that the practice of deploying trained dogs to bite and hold suspects is neither automatically unreasonable nor reasonable, but depends upon the particular situation).

According to the Plaintiff's version of events, the dog attack lasted for minutes, and Officer Thomas had difficulty calling the dog off. The Plaintiff contends that Officer Thomas even resorted to punching Leo when the dog was not responding to his verbal commands to release. (Resp. 2, ECF No. 94; Plf's Dep. 48, ECF No. 93-4, at 30.) By implication, it appears that the Plaintiff may be trying to assert that the length of the dog attack was excessive. However, the Court notes that the principal theory advanced by the Plaintiff has been that use of the police dog was excessive force, regardless of the duration of the attack, because the Plaintiff was compliant to the officers' instructions and the dog was unnecessary to effectuate an arrest. Regardless, the Court finds that the efforts made by Officer Thomas to get Leo to release, as the Plaintiff asserts, suggests that Officer Thomas only used Leo as necessary for officer safety to secure the Plaintiff while Officer Thomas climbed over the pool wall.

Finally, the Plaintiff argues that Officer Thomas did not need to use the dog but could have waited for backup officers to arrive. However, "[t]he 'reasonableness' of a particular use of

force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 397. Officer Thomas was aware that other officers were in the area searching for the Plaintiff, but he could not know exactly how long it would take another officer to arrive and he was not required to wait to apprehend the Plaintiff. Even if other officers arrived within seconds, as the Plaintiff contends, the undisputed facts demonstrate that only Officer Thomas and the Plaintiff were present at the moment Officer Thomas assisted the dog into the pool.

For the foregoing reasons, the Court finds that Officer Thomas's use of force, including his police dog, to subdue and apprehend the Plaintiff was objectively reasonable.


2.      **Officer Alvarez**

The Plaintiff contends that Officer Alvarez's conduct to restrain him, pat him down, and place him in handcuffs was excessive. The Plaintiff alleges that Officer Alvarez punched him in the back and ribs and also kicked him in the head, leaving lumps on his head and bruising. The Defendants argue that the medical records from the visit to the emergency room do not give any indication that a beating as alleged by the Plaintiff occurred. The Defendants further argue that photographs taken of the Plaintiff in the ambulance do not depict any injury or goose egg to the Plaintiff's head. The Plaintiff argues that it is a credibility determination and a question of fact for the jury whether Officer Alvarez subjected him to a beating during his takedown. According to the Plaintiff, the lack of evidence in the hospital records for a head injury is due to hospital staff focusing on his more severe injuries, the dog bite and potential cardiac issues. The Plaintiff also argues that he was compliant and that he was only screaming in pain at the time of his arrest and did not tell Officer Alvarez he was high on cocaine at the scene. The Defendants assert that

the Plaintiff was screaming, had stated that he was high on cocaine, and that he resisted a pat down search.

The right to make an arrest necessarily carries with it the right to use some degree of physical coercion to effectuate an arrest. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97.

The Plaintiff asserts that there are too many discrepancies in the different versions of the facts for summary judgment to be appropriate, and that questions of credibility exist that must be determined by a jury. Although a self-serving affidavit may sometimes preclude summary judgment, a district court may properly refuse to consider parts of an affidavit that are either irrelevant or are unsupported by the record. *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 509 (7th Circuit 2004). The Plaintiff contends that there is a question of fact as to whether he was behaving erratically, as the Plaintiff alleges he was compliant and was only screaming in pain, but the undisputed facts demonstrate that the Plaintiff had fled from the police and was screaming at the time he was patted down and placed in handcuffs by Officer Alvarez. While the parties disagree about when the Plaintiff told police that he was high on cocaine, the Court finds this fact to be immaterial. "It is well established that a police officer may not continue to use force against a suspect who is subdued and complying with the officer's orders . . . [b]ut that principle depends critically on the fact that the suspect was indeed subdued." *Johnson*, 576 F.3d at 660 (citations omitted). Here, the Plaintiff had been fleeing from the police and was screaming when he was patted down and handcuffed by Officer Alvarez. Officers did not know that the

15

Plaintiff was unarmed until the pat down had been completed. Given the uncertainties of the situation, it was objectively reasonable for Officer Alvarez to use some force to subdue the Plaintiff.

Although the Court must view all facts in the light favorable to the Plaintiff, the Plaintiff still bears the burden to present facts sufficient to produce a genuine issue of material fact. "Summary judgment cannot be used to resolve swearing contests between litigants," *Payne*, 337 F.3d at 770, but here the Defendants present more evidence than a mere swearing contest. First, the medical records from the hospital do not contain any indication that the Plaintiff suffered the head injury alleged. The Plaintiff attempts to explain this absence by arguing that the hospital staff was focused on more important concerns and, by implication, failed to include information about injuries to his head and back. Second, the Defendants also assert that photographs taken of the Plaintiff in the ambulance do not reveal any injuries suffered by the Plaintiff as a result of being searched and handcuffed by Officer Alvarez. The Plaintiff points to nothing in the record that supports his contention the Officer Alvarez's use of force was excessive beyond his own self-serving affidavit. As such, the Plaintiff has not produced sufficient evidence by which a reasonable jury could conclude that Officer Alvarez used objectively unreasonable force when he patted down and handcuffed the Plaintiff. Therefore, the Court finds that Officer Alvarez's actions were objectively reasonable.

### C.     Qualified Immunity

The Defendants additionally argue that the doctrine of qualified immunity protects them from liability because they did not violate the Plaintiff's clearly established rights.

"The doctrine of qualified immunity protects government officials from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). When evaluating a claim of qualified immunity, courts consider (1) whether the plaintiff's allegations make out a deprivation of a constitutional right, and (2) whether the right was clearly established at the time of the defendant's alleged violation. *McAllister*, 615 F.3d at 881. Courts may address these two questions in the order they believe best suits "the circumstances of the particular case at hand." *Id.* Qualified immunity is a fact-intensive analysis. *See Ienco v. City of Chi.*, 286 F.3d 994, 1001 (7th Cir. 2002). In considering whether a constitutional violation occurred, courts examine the facts in a light most favorable to the party asserting an injury. *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009). Violation of a constitutional right may be clearly established either because "the violation is so obvious that a reasonable state actor would know that what they are doing violates the Constitution, or if a closely analogous case establishes that the conduct is unconstitutional." *Siebert v. Severino*, 256 F.3d 648, 654–55 (7th Cir. 2001). The burden is on the plaintiff to "show that the right is clearly established such that the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Findlay v. Lendermon*, 722 F.3d 895, 899 (7th Cir. 2013) (internal quotation omitted).

The Court finds that the Defendants are entitled to qualified immunity. The Court has already analyzed the Plaintiff's excessive force claim and determined that he has failed to make out the deprivation of a constitutional right as to either Defendant. Furthermore, the Court finds that, according to the Plaintiff's allegations, the Defendants did not take any actions to deprive the Plaintiff of any clearly established statutory or constitutional rights. The Plaintiff has failed

"to carry his burden of showing a clearly established right [b]ecause he has neither identified a

sufficiently analogous case nor adequately explained how [the officers] actions were so plainly

excessive that any reasonable officer would know it violated the constitution." *Id.* at 900.

In an effort to identify a "closely analogous case," the Plaintiff points to three cases. The

first, *Frazel v. Flanigan*, 102 F.3d 877 (7th Cir. 1996), in unavailing. In that case, the court held

that a police officer was not entitled to qualified immunity after striking a subdued suspect with a

nightstick. However, unlike the facts of this case, the suspect in *Frazel* had been placed in

handcuffs and put into the squad car before the beating occurred. In addition, *Frazel* did not

involve the use of a police dog and the undisputed medical evidence in the record revealed

multiple and serious abrasions and bruises consistent with a beating, including the need for

twenty stitches to the suspect's forehead and a boot-shaped mark on his lower back.

In the next case the Plaintiff points to, *Ellis v. Wynalda*, 999 F.2d 243 (7th Cir. 1993), a

police officer shot a suspect who had thrown a bag at him. The Plaintiff cites to the case to assert

the proposition that force that is reasonable while a suspect poses a threat is no longer reasonable

once that threat is no longer present. True, but *Ellis* is no more analogous than *Frazel*, for it also

did not involve the use of a police dog and involved a suspect throwing an object at the police,

which did not occur in this case.

The final case the Plaintiff points to, *Priester v. Riviera Beach*, 208 F.3d 919 (11th Cir.

2000), denied qualified immunity to an officer who allowed his police dog to attack a suspect

who was lying on the ground and was not resisting. In that case, the suspect immediately

submitted to the officers' instructions when two officers discovered him hiding in a canal. An

officer instructed the suspect to either lie down or he would release the dog on him. When the

suspect complied, the officer released the dog anyway. The court in *Priester* noted that the

18

suspect did not pose a threat of bodily harm to the officers or anyone else, and that the suspect was not attempting to flee or resist arrest. The Plaintiff asserts that, like *Priester*, he was not resisting and was fully compliant when Officer Thomas released the dog on him and Officer Alvarez allegedly beat him. However, *Priester* is not closely analogous to the instant case. In *Priester*, one officer released the dog after the suspect followed the instruction given to avoid the dog's release, and the officer had a second officer beside him who could have assisted him. Here, at the time of the dog's release, there were no other officers present to assist Officer Thomas. Indeed, the dog assisted by holding and controlling the Plaintiff until Officer Thomas could climb over the wall.

"[Q]ualified immunity requires the plaintiff to produce a case clearly establishing the right in a particularized sense, rather than in an abstract or general sense." *Findlay*, 722 F.3d at 900 (internal quotation marks omitted). Here, the Plaintiff fails to produce a closely analogous case clearly establishing the right he alleges was violated, i.e., that it was inappropriate to use a police dog under the circumstances of this case, and fails to explain how either officer's actions were so plainly excessive that any reasonable officer would know they violated the Constitution. Therefore, the Court finds that the Defendants are entitled to qualified immunity and will grant the Defendants' request.

## CONCLUSION

For the reasons stated above, the Court GRANTS the Defendants' Motions for Summary Judgment [ECF No. 91]. The Court DIRECTS the Clerk to enter judgment in favor of the Defendants and against the Plaintiff.

SO ORDERED on September 2, 2014.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION