# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

MITCHELL ALICEA,             )
                                     )
        Plaintiff,           )
                                     )
        v.                  )     CAUSE NO.: 2:11-CV-445-TLS
                                     )
AUBREY THOMAS, et. al.,     )
                                     )
        Defendants.      )

## OPINION AND ORDER

This matter is before the Court on Plaintiff Mitchell Alicea's Motion to Reconsider [ECF No. 101] filed on September 30, 2014. The Defendants, Aubrey Thomas and Alejandro Alvarez, filed their Response [ECF No. 102] on October 14, 2014. The deadline for filing a reply has passed, and no reply brief has been filed.

On September 2, 2014, the Court entered an Opinion and Order [ECF No. 99] granting the Defendant's Motion for Summary Judgment [ECF No. 91] and judgment was entered that same day. The Plaintiff has filed the instant motion pursuant to Federal Rule of Civil Procedure 59(e) and asks the Court to reverse its previous ruling, deny the Defendants' motion for summary judgment, and reinstate the indemnification claim against the City of Hammond.

## BACKGROUND

On the morning of March 29, 2011, the Plaintiff was in the process of burglarizing a home in Hammond, Indiana, when the police car pulled up. Seeing the police, the Plaintiff ran out of the house and fled on foot, ultimately finding an empty above-ground swimming pool in a backyard. Determining this would be a good place to hide, the Plaintiff jumped over the approximately five-foot-high wall and sat down. Meanwhile, Sergeant Thomas, a codefendant in

this case, arrived and ordered his police canine to begin tracking the Plaintiff. The police dog and Thomas discovered the Plaintiff hiding in the pool and the dog, after being lifted over the pool wall, apprehended the Plaintiff by biting and holding his right arm. Thomas then climbed over the wall and ordered the dog to release. At this point, other officers, including codefendant Officer Alvarez, arrived on scene and arrested the Plaintiff. The Plaintiff was then taken to the hospital to be treated for the injuries he suffered during the arrest. For a more detailed statement of facts, the Court incorporates by reference its Opinion and Order [ECF No. 99] granting the Defendant's Motion for Summary Judgment.

The Plaintiff brought an action pursuant to 42 U.S.C. § 1983 against Police Sergeant Aubrey Thomas, Police Officer Alejandro Alvarez, and the City of Hammond, alleging that Defendants Thomas and Alvarez used excessive and unreasonable force during the Plaintiff's arrest and that Defendant City of Hammond was liable to indemnify Defendants Thomas and Alvarez as to any judgment. The Defendants filed a Motion for Summary Judgment [ECF No. 91] and a Memorandum in Support [ECF No. 92] on October 21, 2013. The Plaintiff filed a Response [ECF No. 94] on November 15, 2013, and the Defendants filed a Reply [ECF No. 96] on November 27, 2013. On September 2, 2014, the Court entered an Opinion and Order [ECF No. 99] granting the Defendant's Motion for Summary Judgment and ordered that judgment be entered in favor of Defendants Thomas and Alvarez. The Court dismissed without prejudice Defendant City of Hammond, finding that the indemnification claim against the city was not ripe for adjudication.

The Plaintiff asserts in his instant motion that the Court failed to consider the Seventh Circuit's recent opinion in *Miller v. Gonzalez*, 761 F.3d 822 (7th Cir. 2014), decided after briefing but before the Court's decision granting summary judgment for the Defendants. The

Plaintiff argues that the *Miller* case materially affects the Court's analysis of excessive force in cases with a fleeing suspect and that it requires the Court to reverse itself, deny the Defendant's Motion for Summary Judgment, and reinstate the indemnification claim against the City of Hammond.

## STANDARD OF REVIEW

Rule 59(e) permits "a court to alter or amend a judgment only if the petitioner can demonstrate a manifest error of law or present newly discovered evidence," but Rule 59(e) does not permit the presentation of new "evidence that could have been presented before judgment was entered." *Obriecht v. Raemisch*, 517 F.3d 489, 493 (7th Cir. 2008). The Seventh Circuit has discussed the role of the motion to reconsider:

> A motion for reconsideration performs a valuable function where the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court.

*Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (citations omitted). In essence, a motion for reconsideration under Rule 59(e) "calls into question the correctness of the judgment." *Kladis v. Brezek*, 823 F.2d 1014, 1017 (7th Cir. 1987). A rule 59(e) motion may not be used simply to re-litigate issues that have already been decided or to advance arguments or theories that could and should have been made before the district court rendered a judgment. *Sigsworth v. City of Aurora, Ill.*, 487 F.3d 506, 512 (7th Cir. 2007) (quotation marks omitted); *Moro v. Shell Oil Co.*, 91 F.3d 872 (7th Cir. 1996).

**DISCUSSION**

**A.     Officer Thomas**

In the instant Motion to Reconsider, the Plaintiff argues that the Court's Opinion and Order granting summary judgment to the Defendants relied heavily on the Seventh Circuit's decision in *Johnson v. Scott*, 576 F.3d 658 (7th Cir. 2009), a case the Plaintiff tried to distinguish from his case at the summary judgment stage. The Plaintiff contends that the more recent *Miller v. Gonzalez* decision, 761 F.3d 822 (7th Cir. 2014), "cautioned against placing significant precedential weight on the fact-intensive *Johnson* decision" and that *Miller* provides the proper legal standard governing summary judgment in excessive force cases such as this. (Mot. to Recons. 2–3, ECF No. 101.) From the Plaintiff's perspective, the *Miller* decision is fundamentally similar to this case, and requires the Court to reverse its decision and find that a genuine dispute of material fact exists. The Defendants argue that the Plaintiff's reliance on *Miller* is misplaced, and that the Plaintiff is simply trying to relitigate issues already determined using a distinguishable case.

In *Miller*, police officers Gonzalez and Stange investigated a stabbing in which Gonzalez searched the surrounding neighborhood for the suspect while Stange interviewed a witness to the stabbing in the witness's house.[1] *Miller*, 761 F.3d at 824. Based on that interview and Stange's communication about the direction the suspect ran, Gonzalez approached a gas station about two blocks away where he saw Miller exit his car drinking a beer. *Id.* In answer to Gonzalez's inquiry, Miller denied seeing anyone running in the area, but Miller, knowing he was on

---

[1] Although his account differed from those of the defendant officers, Miller's versions of the facts, as the nonmoving party, applied at the summary judgment stage and are recounted here.

probation, was driving without a license, and was seen exiting his car with a beer, became nervous and fidgety as Gonzalez continued to question him. *Id.*

Ultimately, Miller took off running with Gonzalez in pursuit. Gonzalez's sergeant, who was at the gas station, radioed Stange to inform him that Gonzalez was pursuing a suspect and that they were headed his direction. *Id.* Stange exited the house and saw Gonzalez chasing Miller straight toward him. *Id.* When Stange identified himself as a police officer, Miller darted left and jumped a chest-high chain link fence into a small yard, only to discover that he was trapped. *Id.* The roughly six feet by ten feet yard was enclosed on the east and south sides by the chest-high chain link fence, on the west side by the side of a garage, and on the north side by a tall wooden fence. *Id.* The garage and wooden fence blocked the west and north ends of the yard respectively, and Gonzalez was approaching from the south. *Id.* at 825. Stange jumped the fence after Miller, drew his gun, and ordered Miller to the ground. Miller proceeded to lay down on his stomach and placed his arms spread-eagle out to his sides. *Id.* Under Miller's version of the facts, nearby lighting illuminated the area and Gonzalez could see and thus know that Miller had been subdued by Stange. *Id.* Approximately ten to twelve seconds later, Gonzalez leapt over the fence and landed on Miller's head, breaking his jaw. *Id.* As Miller was handcuffed and led to the car, he told Gonzalez, "You ain't have to break my jaw," to which Gonzalez replied "I told you not to run." *Id.*

In Miller's excessive force claim against the officers, the officers moved for summary judgment, which was granted by the district court. The Seventh Circuit reversed as to Officer Gonzalez, however, finding that the district court erred when it determined that Miller lacked sufficient evidence from which a reasonable jury could infer that Gonzalez's blow was intentional. The Court of Appeals reaffirmed the proposition that at summary judgment, all facts

and reasonable inferences must be construed in favor of the nonmoving party, regardless of the heftiness of the evidence on one side or the credulity of a particular litigant. *Id.* at 827. In restating this warning, the Court of Appeals noted that the district court appeared to credit movant/defendant Gonzalez's version of the facts rather the nonmovant/plaintiff Miller's, and that Miller, if believed, had presented evidence from which a rational jury could determine that Gonzalez acted deliberately in striking Miller.

In *Johnson*, an officer responded to a dispatch concerning a suspected shooting at a nightclub and a report that a white Chevrolet Caprice was seen leaving the parking lot. *Johnson*, 576 F.3d at 659. The officer spotted the car and activated his emergency lights, but the car fled, ignoring a stop sign and speeding on ice-covered roads. When the suspect encountered a police roadblock, he abandoned the car and fled on foot. *Id.* The officer jumped out of his squad car to pursue the suspect and released his police dog to do the same. *Id.* The suspect ran through a residential yard, and jumped a chain-link fence, but quickly turned, put his hands in the air, and said "I give up" when he was blocked by a five-foot-tall wooden fence. *Id.* At the time of his surrender, the officer and police dog were only six to eight feet behind. *Id.* The dog grabbed the suspect's arm while the officer knocked him to the ground. *Id.* The suspect struggled to get away from the dog's biting, which the officer interpreted as resistance, and so the officer struck the suspect several times to subdue him. *Id.* Within five to ten seconds of successfully handcuffing the suspect, the officer ordered the dog off and the dog complied. *Id.* at 660.

The suspect brought an excessive force claim against the officer, but the Seventh Circuit found the officer's actions were objectively reasonable and affirmed the district court's decision to grant summary judgment. The court noted two serious crimes at issue: a shooting and reckless flight from the police in a vehicle, the first of which allowed the officer to reasonably believe the

suspect might be armed, as well as the suspect's attempts to evade arrest. Although the suspect

insisted that the use of force was unreasonable because he had surrendered, the court held that

the officer was not required to take the suspect's apparent surrender at face value and was

entitled to err on the side of caution when faced with an uncertain or threatening situation, that

the surrender did not establish that the suspect was unarmed, and that a reasonable officer could

think that the use of the dog was necessary because the suspect might have had the time needed

to retrieve and use a weapon. *Id.* at 660–61.

　　Here, the Plaintiff argues that the Court erroneously drew factual inferences in favor of

the Defendants and discounted the Plaintiff's recollection of the facts and that genuine issues of

material fact exist, requiring the Court to reverse its grant of summary judgment in favor of the

Defendants. The Plaintiff contends that this case is more analogous to *Miller*, a case that,

according to the Plaintiff, "cautioned against placing significant precedential weight on the fact-

intensive *Johnson* decision." (Mot. to Recons. 2–3, ECF No. 101.) This assertion is incorrect.

The *Miller* decision said nothing to overrule, limit, or caution against the precedential value of

*Johnson*; rather, the Seventh Circuit held that the situation in *Miller* "is distinguishable from the

situation in *Johnson*." *Miller*, 761 F.3d at 829. At summary judgment, the Plaintiff argued

unsuccessfully that *Johnson* was distinguishable from the instant case. Now, in his Motion to

Reconsider, the Plaintiff argues, again, that *Johnson* is distinguishable and that this case is more

like *Miller*. However, as shall be shown, the Plaintiff's situation is distinguishable from *Miller*

and the Court viewed all facts and reasonable inferences in the light most favorable to the

Plaintiff when it granted the Defendants' summary judgment motion.

　　In *Miller*, the defendant officers cited *Johnson* and argued that they were not in a position

to ascertain whether the plaintiff's purported surrender was genuine. The Court of Appeals

disagreed, finding that under the Plaintiff's version of the facts, Miller was lying prostrate on the ground and motionless for approximately ten seconds, subdued at gunpoint by another officer, when Gonzalez leapt the fence and kneed him in the jaw. *Miller*, 761 F.3d at 829. Here, the Plaintiff argues, as he did at summary judgment, that his apparent surrender was genuine and that he was subdued. In particular, the Plaintiff argues that "[i]f lying on the ground for a mere ten seconds in a fenced-in back yard is sufficient to overcome the presumption that an officer is not required to take an immediate surrender at face value, then certainly [the Plaintiff] crouching in a swimming pool before standing up and raising his hands *in direct compliance with Defendant Thomas's commands* must be afforded the same credit for purposes of summary judgment." (Mot. to Recons. 4 (emphasis in original).) However, the *Miller* facts are distinguishable from the Plaintiff's case. Miller was lying motionless face down on the ground and subdued at gunpoint by an officer who was on the same side of the fence as Miller before the second officer jumped the fence and kneed Miller in the head. *Miller*, 761 F.3d at 825. Both officers then proceeded to place Miller in handcuffs and escort him to their car. *Id.* Although the second officer arrived within ten seconds and assisted, there was no physical barrier or apparent reason why the first officer would be unable to apprehend Miller had he been alone.

Here, the Plaintiff's version of the facts establishes that a five-foot-tall pool wall separated Officer Thomas and his police dog from the Plaintiff, who was standing with his arms up. At the time Officer Thomas assisted the dog into the pool to secure the Plaintiff, no other officers were present. They arrived "[a] split-second later, while the dog was attacking [the Plaintiff]." (Resp. 2, ECF No. 94.) The Plaintiff's apparent surrender "did not establish that [the Plaintiff] was unarmed," and the Plaintiff "might have had the time he needed to retrieve and use a weapon" or to change his mind and continue to flee by climbing over the opposite pool wall

while Officer Thomas climbed the pool wall. *Johnson*, 576 F.3d at 660. Accordingly, "[a] reasonable officer could think that the use of the dog was necessary to help control [the Plaintiff]" while Officer Thomas entered the pool. *Id.* In *Miller*, the Court of Appeals noted:

> In affirming the district court's grant of summary judgment on Johnson's excessive-force claim, we ruled that, while officers may not continue to use force against a subdued suspect, Johnson was not yet known to be subdued when his pursuers applied force. The critical fact in *Johnson* was that the officer "had no idea how Johnson was going to behave once he was cornered."

*Miller*, 761 F.3d at 829–30 (citations removed). Likewise, Officer Thomas had no idea how the Plaintiff was going to behave now that he had been discovered in the pool. Although the Plaintiff argues that he was "effectively trapped" in the pool, he could have climbed out of the pool just as easily as he climbed in. Furthermore, under the Plaintiff's version of the facts, Officer Thomas used both hands to lift the dog into the pool, meaning that the Plaintiff could not have been subdued at gunpoint like in *Miller*. While "[i]t is well established that a police officer may not continue to use force against a suspect who is subdued and complying with the officer's orders, . . . that principle depends critically on the fact that the suspect is indeed subdued." *Johnson*, 576 F.3d at 660. "Not all surrenders, however, are genuine, and the police are entitled to err on the side of caution when faced with an uncertain or threatening situation." *Id.* at 659. Although the Plaintiff contends that he had been compliant with Thomas's commands, Thomas had no way of knowing how he would behave while Thomas climbed over the pool wall. The Court finds, as it found at summary judgment, that it was objectively reasonable for Thomas to use his dog to secure and subdue the Plaintiff while he climbed over the wall.

Next, the Plaintiff argues that, "[a]lthough [he] does not meaningfully contest [that burglary is a serious crime], it is immaterial for purposes of summary judgment analysis if the Court were to construe the facts in the light most favorable to the Plaintiff." (Mot. to Recons. 4.)

The Plaintiff contends that the burglary allegations are no longer relevant because he had been crouching in the empty swimming pool before raising his hands in surrender, effectively arguing that any threat had decreased to the degree that the force used was no longer reasonable. *Id.*; *see also Cyrus v. Town of Mukwonago*, 624 F.3d 856, 863 (7th Cir. 2010) ("Force is reasonable only when exercised in proportion to the threat posed and as the threat changes, so too should the degree of force." (citations omitted)). The Court finds the Plaintiff's argument unpersuasive.

> In order to assess objective reasonableness, the court must consider all the circumstances, including notably "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight."

*Johnson*, 576 F.3d at 660 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The severity of the crime at issue is clearly material to an objective reasonableness inquiry. Subsequent actions by a suspect do not alter the analysis of the severity of the crime at issue. Those considerations, instead, apply to the other prongs of the *Graham* inquiry. Here, the Court finds that burglary is a serious crime and that the severity of the crime is a material consideration under the objective reasonableness inquiry in this case.

The Plaintiff also argues that the Court incorrectly drew an inference in favor of the Defendants concerning whether Thomas gave a warning before unleashing his dog. At the summary judgment stage, the Plaintiff argued that there was no evidence that the police gave any sort of warning before releasing the dog. The Defendants argued that Thomas gave the warning "Hammond Police Canine! Announce or sound off or I'm going to send the dog!" before starting the search. The Defendants also argued at summary judgment that if the Plaintiff did not hear the warning, it was a consequence of his decision to flee from the police.

According to the Plaintiff, the Court incorrectly found this dispute immaterial because it reasoned that if the Plaintiff did not hear the warning, it was due to his own flight. In doing so, the Plaintiff says, the Court "blatantly construe[d] the facts in a light more favorable to the Defendants" by finding that the Plaintiff did not hear the warning, as opposed to the possibility that no warning was actually given, as alleged by the Plaintiff. (Mot. to Recons. 5.) The Plaintiff contends that the issues of whether he did not hear a warning or whether a warning was given are for a jury to decide. It is true that the Court found the dispute as to whether Thomas gave a warning, or the Plaintiff heard a warning, immaterial, but not for the reasons cited by the Plaintiff. Rather, the Court found that at the time of the dog's release, the Plaintiff's whereabouts were unknown, and that it is not objectively unreasonable for the police to use a trained dog to search for and hold fleeing suspects. As such, the Court found it immaterial whether a warning was given at the time of the dog's release. *See McKay v. City of Hayward*, 949 F. Supp. 2d 971, 983–85 (N.D. Cal. 2013) (discussing the case law of various circuits and noting that only the Fourth Circuit and Eighth Circuit require a prior verbal warning, while the Seventh Circuit is among those where a prior warning is not dispositive of the reasonableness of seizing an individual with a police dog); *Johnson*, 576 F.3d at 661 (finding that although there was no verbal warning, the plaintiff failed to show how such a warning would make a difference and that the practice of deploying trained dogs to bite and hold suspects is neither automatically unreasonable nor reasonable, but depends upon the particular situation).

Furthermore, the Court found, as reiterated above, that it was objectively reasonable to use the dog to secure and subdue the Plaintiff to enable Officer Thomas to safely climb the pool wall to apprehend the Plaintiff. *See, e.g.*, *United States v. Lawshea*, 461 F.3d 857, 860–61 (7th Cir. 2006) (use of police dog was reasonable to prevent suspect from fleeing); *Tilson v. City of*

*Elkhart*, 96 F. App'x 413, 416 (7th Cir. 2004) (officer's use of a dog to bite and hold suspect until the officer could apprehend him was not an unconstitutional (or unreasonable) seizure per se); *Miller v. Clark Cnty.*, 340 F.3d 959 (9th Cir. 2003) (officer's use of police dog to bite and hold suspect until officers arrived on the scene did not constitute excessive force where suspect had fled from police and may have had a weapon); *Jarrett v. Town of Yarmouth*, 331 F.3d 140 (1st Cir. 2003) (officer's release of police dog to bite and hold suspect did not violate the Fourth Amendment). Accordingly, the Court concluded that the factual dispute as to whether a prior warning was given was immaterial because Officer's Thomas's use of the dog was objectively reasonable with or without any prior warning. In addition, the Plaintiff has not argued why such a warning would have made a difference. *See Johnson*, 576 F.3d at 661. The Plaintiff merely stated that there was no evidence of a warning and, once the Defendants argued that a warning had been given, stated that his version of the facts should prevail. Thus, the Plaintiff's argument is without merit.

Finally, the Plaintiff argues the Court erred in its consideration of Officer Thomas's alleged remark of "You like to rob houses, you fucking punk?" before hoisting the dog into the pool. The Plaintiff points out that in *Miller*, the district court concluded that Miller lacked sufficient evidence that Gonzalez's blow was intentional. The Seventh Circuit disagreed, finding that a rational jury could reasonably infer that Gonzalez was retaliating and intended to injure Miller when he replied "I told you not to run" after Miller said "You ain't have to break my jaw!" Likewise, the Plaintiff argues that a rational jury could plausibly infer from Thomas's alleged statement that he was placing the dog into the pool for retaliatory purposes. Indeed, the Plaintiff believes Thomas's alleged statement is more malicious and carries a clear implication that Thomas was attempting to punish, and not simply arrest, the Plaintiff.

The Defendants argue, first, that the Court properly recognized the differences between the two versions of facts and explained that it was using the Plaintiff's version in its Opinion and Order granting summary judgment. Second, the Defendants argue that Thomas's alleged statement is immaterial, and that even if the statement could suggest a retaliatory motive, Thomas's actions, as described by the Plaintiff, attempting to call off the dog after he initially had difficulty doing so negates any inference that Thomas sought to punish the Plaintiff.

In determining whether an officer's actions were objectively reasonable under the circumstances, the Court should view the matter "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 390. Thus, an officer's use of force is unconstitutional if, "judging from the totality of the circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest." *Payne v. Pauley*, 337 F.3d 767, 778 (7th Cir. 2003) (quoting *Lester v. City of Chicago*, 830 F.2d 706, 713 (7th Cir. 1987)). Here, the pool wall separated Thomas from the Plaintiff and, as previously stated, the Plaintiff might have had the opportunity to change his mind and either grab a weapon or continue to flee while Thomas climbed over the wall. Faced with this uncertain and potentially threatening situation, Thomas had an objectively sufficient reason to use the dog to secure and subdue the Plaintiff so that he could safely climb over the wall and make the arrest. Thus, Thomas's alleged statement is immaterial because, despite any alleged subjective reasons, it was reasonably necessary for Thomas to use the dog to make the arrest.

Although the Plaintiff states that the dog attack lasted for minutes, he has not argued that the length of the attack was excessive. Rather, the Plaintiff argues that the use of the dog was unnecessary to effectuate the arrest. The Court finds that it was objectively reasonable for Thomas to use the dog to secure and subdue the Plaintiff in order to effectuate the arrest. Further,

as noted at summary judgment, the Plaintiff's version of the facts contending that Thomas had difficulty calling off the dog suggests that Thomas used the dog as necessary to secure the Plaintiff while Thomas climbed the wall, and then, once that physical barrier was resolved, sought to end the force used to secure and hold the Plaintiff.

For the foregoing reasons, the Plaintiff's Motion to Reconsider is denied as to Defendant Officer Thomas.

**B.      Officer Alvarez**

The Plaintiff argues that the Court improperly resolved a credibility determination that should have been left to the jury when it found that Officer Alvarez was entitled to summary judgment. The Plaintiff asserts that Alvarez's conduct to restrain him, pat him down, and place him in handcuffs was excessive and that this case presents an "archetypal factual dispute" between his version of the events and Alvarez's version. The Plaintiff alleges that Alvarez punched him in the back and ribs, and kicked him in the head, leaving lumps on his head and bruising. The Defendant argues that the Plaintiff is presenting the same arguments that the Court rejected at the summary judgment stage without presenting any citation to a new legal standard or manifest error in the Court's reasoning.

The crux of the Plaintiff's argument is that Alvarez's use of force was unnecessary and excessive because the Plaintiff was subdued, was seriously injured by the dog attack, had genuinely surrendered, and was compliant with officer instructions. It is undisputed that at the time of the arrest the Plaintiff was screaming and, viewing the facts in the light most favorable to the Plaintiff, was doing so due to the pain of the dog's biting. The Court found at summary judgment that the Plaintiff had been fleeing from the police, was screaming at the time he was

patted down and handcuffed by Alvarez, and that officers did not know that the Plaintiff was unarmed until the pat down had been completed. Given the uncertainties of the situation, the Court found that it was reasonable for Alvarez to use some force to subdue the Plaintiff.

The Plaintiff argues that the Court improperly made a credibility determination when it found that the Plaintiff had not produced sufficient evidence, apart from his affidavit, by which a reasonable jury could conclude that Alvarez used excessive force. In particular, the Plaintiff argues that a self-serving affidavit is an acceptable method to present evidence of disputed material facts. (Mot. to Recons. 6–7 (quoting *Payne*, 337 F.3d at 771 (defendant's argument that plaintiff's deposition testimony is insufficient to overcome summary judgment "is simply another way of saying that her testimony is not credible"))); *see also Wilson v. McRae's, Inc.*, 413 F.3d 692, 694 (7th Cir. 2005) ("Most affidavits are self-serving, as is most testimony, and this does not permit a district judge to denigrate a plaintiff's evidence when deciding whether a material dispute requires trial."). The Plaintiff argues that summary judgment is inappropriate because it cannot be used to resolve swearing contests and all inferences must be drawn in his favor. *Payne*, 337 F.3d at 770 ("Summary judgment cannot be used to resolve swearing contests between litigants.").

This case involves more than a mere swearing contest, however. The Defendant argues that there is a complete lack of supporting evidence in the record to support the Plaintiff's contentions. In particular, the Defendants noted that photographs taken of the Plaintiff in the ambulance and medical records from multiple health care providers who treated the Plaintiff do not include any mention of injury apart from the dog bites to his forearm. The Plaintiff's counterargument is that these records are unnecessary and that he doesn't need to present other evidence to meet his burden on summary judgment. In particular, the Plaintiff asserts:

"[T]here is a credible explanation for why the medical records from the hospital did not contain a mention of any injuries sustained as a result of being stricken by Alvarez. A jury could conclude based on [the Plaintiff]'s testimony about his reporting to medical personnel as well as the fact that he was being evaluated for far more serious conditions . . . than any injuries sustained from the beating by Alvarez are sufficient explanation for the absence of any medical attention for injuries from the beating."

(Resp. 11.) Thus, the Plaintiff contends that Alvarez's conduct merely left him with bruises and a goose bump, which are not the sort of injuries one would receive emergent treatment for.

"Deposition testimony, affidavits, responses to interrogatories, and other written statements by their nature are self-serving." *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013) (stating that a plaintiff may rely on self-serving evidence to create a material factual dispute and expressly overruling cases to extent that they suggest the contrary). "As we have repeatedly emphasized over the past decade, the term 'selfserving' must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment." *Id.* However, "self-serving statements in affidavits without factual support in the record carry no weight on summary judgment." *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 925 (7th Cir. 2004) (citing *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 504 (7th Cir. 2004) (internal quotation omitted)).

In contrast, a self-serving affidavit supported by facts in the record could defeat summary judgment. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir.2003). The record, moreover, may include the self-serving affidavit itself, provided that the affidavit "meets the usual requirements for evidence on summary judgment—including the requirements that it be based on personal knowledge and that it set forth specific facts showing that there was a genuine issue for trial." *Id.*

*Buie*, 366 F.3d at 504. Here, the Court did not denigrate or fail to consider the Plaintiff's affidavit. Rather, it merely noted that the record lacked any supporting evidence that Alvarez's use of force was excessive, apart from the Plaintiff's affidavit. The Plaintiff acknowledges as much and speculates as to why such evidence is not present, suggesting that the injuries were

insignificant compared to the more serious dog bites and, therefore, were not included by medical personnel in the records. Thus, the lack of evidence in the record supporting the Plaintiff's claims was part of the analysis.

The other part of the Court's analysis was whether Alvarez's use of force in restraining the Plaintiff was objectively reasonable. The Court found that it was. Recall that, under the Plaintiff's version of the facts, Alvarez arrived "[a] split-second later, while the dog was attacking [the Plaintiff]." (Resp. 2.) Thus, Alvarez arrived on scene to a screaming Plaintiff whom (1) may have been armed, (2) had just been discovered while fleeing and attempting to evade arrest, and (3) was clamoring to resist the dog's bites. Like Thomas, Alvarez had no idea how the Plaintiff would behave and the Plaintiff "was not yet known to be subdued when [Alvarez] applied force." *Miller*, 761 F.3d 829–30. "The Supreme Court has noted that '[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'" *Payne*, 337 F.3d at 779 (quoting *Graham*, 490 U.S. at 396–97).

Given the uncertainties of the situation, and using the Plaintiff's version of the facts, the Court found that it was objectively reasonable for Alvarez to use some force in arresting the Plaintiff. "[F]rom the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," *Graham*, 490 U.S. at 390, it was reasonably necessary to use some force to make the arrest based on the totality of the circumstances at the time of the arrest. *See Payne*, 337 F.3d at 778. This finding, along with the Court's determination that, apart from his affidavit, there was a lack of supporting evidence in the record to support the Plaintiff's claims, provided

the basis for the Court's finding that the Plaintiff did not produce sufficient evidence by which a reasonable jury could conclude that Alvarez used unreasonable force.

A Rule 59(e) motion cannot be used to relitigate previously settled matters or to present evidence or case theories that could and should have been presented to the Court prior to judgment. *Moro*, 91 F.3d at 872. The Plaintiff makes no new arguments as to Alvarez; he only contends that the Court committed a manifest error of law or fact in its analysis of his affidavit. The Court finds no manifest error of law or fact in its Opinion and Order granting summary judgment to Defendant Alvarez. As such, the Plaintiff's Motion to Reconsider is denied as to Defendant Officer Alvarez.

## C.    Qualified Immunity

The Plaintiff also argues that the Court erred when it found that the Defendants were entitled to qualified immunity. The Plaintiff contends that the Court applied a far too narrow legal standard when it determined that the Plaintiff failed to meet his burden to produce a closely analogous case that clearly establishes a violation of a constitutional right. *See Siebert v. Severino*, 256 F.3d 648, 654–54 (7th Cir. 2001) (noting that a violation of a constitutional right may be clearly established either because "the violation is so obvious that a reasonable state actor would know that what they are doing violates the Constitution, or if a closely analogous case establishes that the conduct is unconstitutional."); *see also Findlay v. Lendermon*, 722 F.3d 895, 900 (7th Cir. 2013) ("[Q]ualified immunity requires the plaintiff to produce a case clearly establishing the right in a particularized sense, rather than in an abstract or general sense."). The Plaintiff believes that his cited cases are not only closely analogous, but "factually indistinguishable" to his case. However, he does not make any argument as to why the Court's

finding was in error. Rather, he simply asserts that his cited cases are closely analogous. The Court has already determined that his cases are not closely analogous, and, as previously stated, a Rule 59(e) motion cannot be used to relitigate previously settled matters. *Moro*, 91 F.3d at 872.

Again, the Plaintiff calls to the Court's attention the recent *Miller v. Gonzalez* decision, arguing that he was a passive resister at most (if at all), making the use of force in this case excessive. *Miller*, 761 F.3d at 829 ("[T]he law is clearly established that police officers cannot use 'significant' force on suspects who are only passively resisting arrest."); *see Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 732 (7th Cir. 2013) (citing cases dating back to 1995). In *Miller*, the Seventh Circuit held that the "prohibition against significant force against a *subdued* suspect applies notwithstanding a suspect's previous behavior—including resisting arrest, threatening officer safety, or potentially carrying a weapon." *Miller*, 761 F.3d at 829 (emphasis added). Here, however, the uncertain situation in which Thomas encountered the Plaintiff required him to climb over the pool wall, which might have given the Plaintiff the time to retrieve a weapon or turn to flee again. It was objectively reasonable for Thomas to use the dog to secure and subdue the Plaintiff so that Thomas could safely climb the wall to apprehend the Plaintiff. Likewise, Officer Alvarez, who arrived "[a] split-second later, while the dog was attacking [the Plaintiff]," came on scene to find a screaming suspect struggling with the dog. (Resp. 2.) From his perspective, he would "not yet know[] [the Plaintiff] to be subdued" when he restrained, handcuffed, and patted down the Plaintiff. *Miller*, 761 F.3d at 829. The Plaintiff argues that there was a break between his previous behavior and the moment of arrest, thereby decreasing the threat and the level of force which may be reasonable. *See Cyrus*, 624 F.3d at 863 (force that is reasonable while a suspect poses a threat may no longer be reasonable as the threat decreases). However, because the Court finds that the Plaintiff was not yet known to be subdued

when the Defendants applied force, and because "police are entitled to err on the side of caution when faced with an uncertain or threating situation," the Court finds that the Defendants did not violate the clearly established law that police officers cannot use "significant" force on suspects who are passively resisting arrest. *Johnson*, 576 F.3d at 659.

Furthermore, the Court notes that the Plaintiff "has alleged that he was not resisting and that he had fully surrendered and complied with Sergeant Thomas' orders to show his hands" at the summary judgment stage. (Resp. 16.) The Plaintiff's arguments that it is clearly established law that it is improper to use significant force against passive resistance are raised for the first time in his Motion to Reconsider, which is improper. A rule 59(e) motion may not be used simply to re-litigate issues that have already been decided or to advance arguments or theories that could and should have been made before the district court rendered a judgment. *See Sigsworth*, 487 F.3d at 512 (a Rule 59(e) motion cannot be used to present evidence or case theories that could and should have been presented to the Court prior to judgment); *Moro*, 91 F.3d at 872 (same). For the foregoing reasons, the Plaintiff's Motion to Reconsider the Court's finding that the Defendants are entitled to qualified immunity is denied.

As a final matter, the Plaintiff argues that the Court erred in finding that his indemnification claim against former codefendant City of Hammond was premature, resulting in dismissal without prejudice. Because the Court has determined that the Defendants' summary judgment motion was properly granted, the Plaintiff's indemnification arguments are denied as moot.

**CONCLUSION**

For the foregoing reasons, the Court DENIES the Plaintiff's Motion to Reconsider [ECF No. 101].

SO ORDERED on January 12, 2015.

                                   s/ Theresa L. Springmann
                                  THERESA L. SPRINGMANN
                                  UNITED STATES DISTRICT COURT
                                  FORT WAYNE DIVISION